UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

I.V., a minor by and through her guardian ad litem Ron V.,

Plaintiff,

v.

VACAVILLE UNIFIED SCHOOL DISTRICT, et al.,

Defendants.

Case No. 2:19-cv-00273-KJM-DB

ORDER

        Plaintiff, a minor with autism, brings this suit through her guardian ad litem against Vacaville Unified School District ("VUSD"), the district Superintendent, Jane Shamieh, and her school's bus driver, Kim Klopson, alleging civil rights violations as well as several state law claims. VUSD and Shamieh move to dismiss several of plaintiff's claims against them, and Klopson separately moves to dismiss claims against her. For the reasons below, the court GRANTS in part and DENIES in part the motion brought by VUSD and Shamieh and DENIES Klopson's motion to dismiss.

I.     BACKGROUND

        This case arises out of an incident that took place on February 6, 2018, while plaintiff, an eight-year-old with Autism Spectrum Disorder, was being transported to school on a VUSD-provided bus driven by defendant Klopson. Am. Compl. ¶¶ 2, 19, ECF No. 11. Because

the bus was equipped with a video camera, the events of the morning are alleged in plaintiff's amended complaint in detail and are summarized below. *Id.* ¶ 20.

Soon after plaintiff boarded the bus, Klopson began scolding her for kicking the seat in front of her, though no one was seated there. *Id.* ¶ 21. Plaintiff alleges that repetitive movements like the kicking are a common manifestation of plaintiff's autism. *Id.* Klopson again scolded plaintiff when plaintiff turned around to look toward the back of the bus, *id.*, and Klopson threatened to make her sit at the back of the bus on the way home from school if she did not behave, *id.* ¶ 22. Plaintiff explains disrupting a daily routine in this way is likely to cause an autistic child emotional distress, and the threat did, in fact, cause plaintiff to become visibly upset. *Id.* ¶¶ 22–23. When the bus arrived at plaintiff's school, Klopson continued to scold plaintiff "in an abusive and angry manner" when plaintiff occasionally stood up at her seat. *Id.* ¶ 24.

The incident escalated when Klopson again threatened to change plaintiff's seat on the bus and, "for no apparent reason," "ripped [plaintiff's] backpack away" and placed it on a seat at the front of the bus. *Id.* ¶ 25. This caused plaintiff to become visibly distressed and agitated, in response to which Klopson said "temper tantrums don't work either." *Id.* When plaintiff's para-educator arrived to pick plaintiff up and take her to class, Klopson instructed plaintiff to pick up her backpack at the front of the bus. *Id.* ¶ 26. However, plaintiff remained in her seat, because "[f]rom Plaintiff's viewpoint, this instruction was in direct conflict with her daily routine and what she had been instructed" to do by her parents and teachers. *Id*. These conflicting instructions caused plaintiff to make non-verbal sounds and "cry[] in distress." *Id.* Klopson "responded by threatening to send plaintiff to the principal's office for her 'bad' behavior." *Id.* When plaintiff's para-educator offered to help get plaintiff off the bus, Klopson stated "I've got this," and again ordered plaintiff to get her backpack and exit the bus. *Id.* ¶¶ 26–27.

The incident further escalated when Klopson responded to plaintiff's inaction by "hover[ing] over [plaintiff] and viciously scold[ing] her for acting like a baby," then, as plaintiff became increasingly agitated, "pinning Plaintiff down onto her seat and stating, 'you can get away with this at home, but not on my bus.'" *Id.* ¶ 27. When plaintiff's response remained unchanged, Klopson "lifted Plaintiff up from her seat and dropped her onto the aisle floor [] then

2

pulled Plaintiff up by her jacket and dropped her a second time." *Id.* ¶ 28. Plaintiff "began to scream for Klopson to 'please stop it,'" but Klopson continued, eventually "violently throwing Plaintiff onto the bus seat yelling at her 'get up' and then dragging her down the bus aisle by her clothing allowing her sweater to come off in the process." *Id.* Klopson then closed the door to the bus, while the two were still inside, "pinned Plaintiff down on the stairs," and taunted her until, nearly six minutes later, Klopson released plaintiff, at that point highly distressed and crying, from the bus. *Id.* ¶ 30. Plaintiff alleges that neither her para-educator, nor any other VUSD faculty, staff, or administrators, took any action while this was occurring. *Id.* ¶ 32.

Later that morning, plaintiff's para-educator reported the incident to the school principle, who launched an investigation. *Id.* ¶ 35. During the school day, plaintiff began complaining of back pain and, upon examination, the school nurse discovered plaintiff had several abrasions and welts on her lower back. *Id.* Nevertheless, plaintiff was kept at school for the remainder of the day and sent home on the bus. *Id.* Plaintiff's parents were not informed of the incident until plaintiff had been sent home. *Id.*

Ultimately, VUSD reported the incident to the Vacaville Police Department and Klopson was charged with felony child abuse. *Id.* ¶¶ 37–38. At the time plaintiff filed her complaint and at the time this court heard defendants' motions to dismiss, Klopson's criminal case was ongoing. *Id.* ¶ 40. Defendant Shamieh made a public statement in response to the incident, saying "[t]here are no words to express why anyone would mistreat a child in that way" and "[n]o child should ever have to experience something like that, especially at school." *Id.* ¶ 39.

Plaintiff filed a complaint against VUSD, Shamieh in her individual capacity, and Kim Klopson in her individual capacity. The operative first amended complaint alleges thirteen claims, including violation of § 1983 against all defendants (claim one); discrimination in violation of the Americans with Disabilities Act (ADA) against VUSD (claim two); discrimination in violation of the Rehabilitation Act against VUSD (claim three); negligence against all defendants (claim four); discrimination in violation of the Unruh Act against VUSD (claim nine), the Bane Act against VUSD and Klopson (claim ten), and California Education

3

Code section 200 against VUSD (claim eleven); and negligent infliction of emotional distress against Shamieh and Klopson (claim thirteen). *See generally* Am. Compl. VUSD and Shamieh move to dismiss all three claims against Shamieh, namely the first, fourth, and thirteenth claims, as well as the first, second, third, ninth, and tenth claims against VUSD. VUSD Mot. to Dismiss ("VUSD MTD"), ECF No. 17-1, at 5. Klopson separately moves to dismiss the first and tenth claims against her. Klopson Mot. to Dismiss ("Klopson MTD"), ECF No. 19-1, at 6. Plaintiff opposes both motions, ECF Nos. 21 ("VUSD Opp'n"), 24 ("Klopson Opp'n"), and defendants have replied, ECF Nos. 25, 26. The court resolves both motions to dismiss below.

II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the

complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

III. DISCUSSION

    A. Excessive Force Claims

Plaintiff alleges two claims based on a theory of excessive force: a § 1983 claim against all defendants for violations of the Fourth and Fourteenth Amendment (claim one), and a Bane Act claim against VUSD and Klopson (claim ten).

        1. Section 1983 Claim Against All Defendants

Section 1983 provides a cause of action for people who believe their federal rights have been violated by someone acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980) (citing 42 U.S.C. § 1983). Plaintiff's § 1983 claim against all defendants is based on the unreasonable seizure clause of the Fourth Amendment,[1] and the substantive due process clause of the Fourteenth Amendment.[2] Am. Compl. ¶¶ 44–45. Defendants do not challenge plaintiff's assertion that the individual defendants acted under color of state law when they committed the allegedly unlawful actions as a public school bus driver and superintendent. However, the parties disagree over whether plaintiff has sufficiently stated additional claims against Klopson, VUSD or Shamieh.

            a. Fourteenth Amendment Due Process Claim

Though plaintiff brings her § 1983 claim under both the Fourth and Fourteenth Amendments, because the claim is one for excessive force it is more aptly analyzed under the Fourth Amendment. In *Beecham v. Roseville City Sch. Dist.*, No. 215CV01022KJMEFB, 2018

---

[1] "No state shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.

[2] "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV.

5

WL 1941670, at *5–6 (E.D. Cal. Apr. 25, 2018), *reinstatement denied*, No. 2:15-CV-01022 KJM EFB, 2018 WL 4699989 (E.D. Cal. Oct. 1, 2018), this court examined the evolution of this type of claim against a school official for using force against a student. Based on a similar claim of physical abuse made by several young children with autism, this court applied the Fourth Amendment rather than the Fourteenth when the complaint referenced both amendments in one claim under § 1983, concluding that "[o]n balance, there appears to be a trend toward analyzing all teacher-student excessive force claims under the Fourth Amendment, even where the alleged abuse does not restrict the student's movement." *Id.* at 6 (citing *Hugunin v. Rocklin Unified Sch. Dist.*, No. 2:15–CV–00939–MCE–DB, 2017 WL 202536, at *4 (E.D. Cal. Jan. 17, 2017) (surveying Ninth Circuit precedent and explaining why Fourth Amendment should apply to teacher-student excessive force claims generally); *see also E.H. v. Brentwood Union Sch. Dist.*, No. C13–3243 TEH, 2013 WL 5978008, at *2 (N.D. Cal. Nov. 4, 2013) (noting "use of force" allegations against students "must be analyzed under the Fourth Amendment")).

Although plaintiff expressly alleges a substantive due process claim under the Fourteenth Amendment in her complaint, Am. Compl. ¶ 44, in her opposition to Klopson's motion to dismiss, she concedes she is "not basing her 1983 claim on an alleged violation of the Fourteenth Amendment Due Process Clause." Klopson Opp'n at 8. Plaintiff confirmed this concession at hearing. To the extent plaintiff's § 1983 claim against any defendant was pleaded as a claim for a violation of the Fourteenth Amendment due process clause, it is DISMISSED.

    b.  Fourth Amendment Claim

      i.  Claim Against Defendant Klopson

The Fourth Amendment applies to excessive force claims based on the actions of public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 336–37 (1985); *Preschooler II v. Clark County School Bd.*, 479 F.3d 1175, 1180–81 (9th Cir. 2007). Defendant Klopson argues plaintiff's Fourth Amendment claim should be dismissed, because Klopson's conduct was not "a 'seizure' [] pursuant to a criminal investigation or an administrative inspection." Klopson MTD at 8 (citing *United States v. Attson*, 900 F.2d 1427 (9th Cir. 1990)). Klopson relies on *Attson*, in which the Ninth Circuit held the Fourth Amendment only applies to individuals who are not law

6

enforcement officers if their conduct is intended to "elicit a benefit for the government in either its investigative or administrative capacities." *Attson*, 900 F.2d at 1431.

Plaintiff points out the Eleventh Circuit has recognized *Attson* was effectively overruled by *Soldal v. Cook County, Ill.*, 506 U.S. 56 (1992). Klopson Opp'n at 7 (citing *Jane Doe I v. Valencia Coll. Bd. of Trustees*, 838 F.3d 1207, 1212 (11th Cir. 2016) (recognizing "*Attson* is not good law" in light of the reasoning in *Soldal*). In *Soldal*, the Court reasoned that whether or not conduct constituted a "seizure" for Fourth Amendment purposes was unrelated to the official's purpose behind that conduct. *Soldal*, 506 U.S. at 69 ("The right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all."). Defendants do not argue the Fourth Amendment would not apply to Klopson's conduct if, in fact, *Attson* has been overruled.

Because *Attson* is Ninth Circuit precedent that has yet to be expressly overruled, the court finds no reason to treat the decision as overruled here. Klopson's conduct fits within the categories *Attson* carves out for Fourth Amendment application. "The *Attson* decision did not suggest that all 'noncriminal, noninvestigatory' examinations fall outside the protection of the Fourth Amendment." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1205 (10th Cir. 2003). Rather, Fourth Amendment protections also "extend to searches conducted for 'administrative' purposes.'" *Id.* The Ninth Circuit has recognized that a school administrator is "performing an administrative function" when "disciplining [a student] and maintaining order in the school." *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). Defendants argue this holding is limited to school administrators, such as school principals. However, the *Attson* decision did not turn on the job title of the state actor, but rather on the purpose behind the actor's conduct:

> In order for us to determine whether non-law enforcement governmental conduct can be considered a "search" or "seizure" under the fourth amendment, it is therefore necessary for us to

/////

/////

7

> evaluate whether such conduct has as its purpose the intention to elicit a benefit for the government in either its investigative or administrative capacities.

*Attson*, 900 F.2d at 1431; *see also Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995) (finding teacher's disciplinary actions subject to Fourth Amendment); *cf. Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 924 (9th Cir. 2001) (holding municipal bus driver subject to Fourth Amendment, because he "acted with the intent to assist the government in its investigatory or administrative purposes, and not for an independent purpose" when preventing plaintiff from riding without identification (internal quotation marks and citations omitted)); *but see Soldal*, 506 U.S. at 69 ("[T]he reason why an officer might enter a house or effectuate a seizure is wholly irrelevant to the threshold question whether the Amendment applies."); *DiBenedetto v. Diaz*, No. 117CV01605DADMJS, 2018 WL 692104, at *3 (E.D. Cal. Feb. 1, 2018) (applying *Attson* test to conduct by postal worker, analyzing reasonable expectations of plaintiff in light of defendant's position as well as defendant's purpose). Plaintiff alleges Klopson's use of excessive force against plaintiff was a reaction to what Klopson allegedly called plaintiff's "'bad' behavior." Am. Compl. ¶ 26. Taking the factual allegations in plaintiff's complaint as true, the purpose of Klopson's alleged conduct was to "discipline[e] [a student] and maintain[] order in the school" bus, which, according to *Doe ex rel Doe* is an "administrative function." *Doe ex rel. Doe*, 334 F.3d at 909. Accordingly, plaintiff has sufficiently pleaded the alleged conduct was for an administrative purpose, and therefore the Fourth Amendment's protection against unreasonable seizures applies to Klopson's conduct, regardless of whether *Attson* has been overruled.

Furthermore, plaintiff has alleged sufficient facts to state a plausible claim that her Fourth Amendment right against unreasonable seizures was violated. As mentioned above, this court has recognized a district court split on the issue, but found the weight of authority counsels in favor of applying the Fourth Amendment to excessive force cases in schools even where the conduct at issue does not restrain a child's movement. *Beecham*, 2018 WL 1941670, at *6. Under that framework, plaintiff has sufficiently alleged a "seizure" occurred, because Klopson's conduct towards plaintiff, coupled with her authoritative role, constituted the use of "some form

8

of physical force or show of authority" that would have caused a reasonable eight-year-old student in plaintiff's shoes to "believe[] [] [s]he was not free to leave." *Pearson v. Cent. Curry Sch. Dist. No. 1*, No. 6:15-CV-1353-AA, 2015 WL 5665457, at *2 (D. Or. Sept. 22, 2015) (quoting *United States v. Summers*, 268 F.3d 683, 686 (9th Cir. 2001)). Whether Klopson's conduct was "unreasonable in light of the child's age and disability and the context of the events," *Preschooler II*, 479 F.3d at 1180, is a fact-intensive inquiry best left to the factfinder, *Beecham*, 2018 WL 1941670, at *6. At this stage, plaintiff's complaint sets forth facts that are sufficient to state a claim for an unreasonable seizure in violation of the Fourth Amendment, including plaintiff's age and disability as well as Klopson's physical handling of plaintiff in response to plaintiff's seemingly innocent behavior. *See id.* (denying defendant's motion for summary judgment upon finding "a reasonable juror could find that striking, pushing, slapping and kicking three and four-year-old special needs students on campus constitutes excessive force in violation of the Fourth Amendment").

Accordingly, Klopson's motion to dismiss the § 1983 claim for violation of the Fourth Amendment is DENIED.

ii. Claim Against Defendant Shamieh

Defendant Shamieh states, correctly, that she cannot be held liable for Klopson's constitutional violations under § 1983 purely on the basis of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, as plaintiff argues, "under § 1983, a supervisor is liable for the acts of [her] subordinates if the supervisor . . . knew of the violations [of subordinates] and failed to act to prevent them." *Preschooler II*, 479 F.3d at 1182 (alteration in original); VUSD Opp'n at 13; *see also Hydrick v. Hunter,* 669 F.3d 937, 942 (9th Cir. 2012) (explaining plaintiff must "allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates." (internal quotation marks and citation omitted)).

Plaintiff alleges on information and belief that Shamieh "was aware of prior discrimination and abuse" committed by Klopson and "did nothing to prevent such abuse from reoccurring." VUSD Opp'n at 5; Am. Compl. ¶ 50 ("On information and belief, KLOPSON had

9

previously used excessive, unreasonable, and unnecessary physical force to seize other disabled students on several different occasions and Defendants . . . abdicated their duty to report and discipline KLOPSON when they first became actually or constructively aware of the alleged abuses."). Plaintiff argues this assertion is supported by the fact that no school staff present at the incident responded to Klopson's actions against plaintiff while those actions were happening, supporting an inference "VUSD employees were habituated to the misconduct." VUSD Opp'n at 10.

These sparse pleadings, which rely heavily on plaintiff's "information and belief," do not satisfy the plausibility requirement under *Twombly* and *Iqbal*. However, at hearing, plaintiff represented she could plead additional facts to bolster her claim against Shamieh if given leave to amend.

Accordingly, defendant Shamieh's motion to dismiss the § 1983 claim against her is GRANTED with leave to amend.

### iii. Claim Against Defendant VUSD

In her opposition, plaintiff agreed to dismiss her § 1983 claim against VUSD. VUSD Opp'n at 14. Accordingly, this claim is hereby DISMISSED without leave to amend.

### 2. Bane Act Claim

California's Bane Act, California Civil Code § 52.1, provides that a person "whose exercise or enjoyment" of constitutional rights has been interfered with "by threat, intimidation, or coercion" may bring a civil action for damages and injunctive relief. *Id.* The essence of such a claim is that "the defendant, by the specified improper means . . . tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or force the plaintiff to do something he or she was not required to do." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007). The elements of an excessive force claim under § 52.1 are essentially the same as under § 1983, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014), though a Bane Act claim additionally requires a showing of "a specific intent to violate the arrestee's right to freedom from unreasonable seizure," *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citation omitted). "[R]eckless disregard for a person's

constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1043 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Here, plaintiff has sufficiently pleaded an excessive force claim against defendant Klopson and defendants do not challenge whether plaintiff has sufficiently pleaded specific intent. Furthermore, because California law permits *respondeat superior* liability for Bane Act violations, plaintiff's claim against Klopson is sufficient to state a claim against VUSD. *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (citing *Gant v. Los Angeles Cnty.*, 772 F.3d 608, 623 (9th Cir. 2014); Cal. Gov't Code § 815.2(a)[3]); Am. Compl. ¶ 5 (alleging Klopson was, at all relevant times, an employee of VUSD).

Defendants argue plaintiff's Bane Act claim should be dismissed because plaintiff fails to allege defendants' actions prevented her from exercising her right to attend school. VUSD MTD at 14; Klopson MTD at 9. Defendants cite *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th at 883, in which the court dismissed a Bane Act claim brought by students alleging their teacher abused them, because "there is no evidence of acts . . . that actually caused a loss of [plaintiff's] right to an education . . . ." *Id.* Plaintiffs correctly point out, however, that the underlying constitutional right at issue in *Austin B.* was plaintiffs' right to a free public education under the California Constitution. *Id.* at 881; VUSD Opp'n at 19. Here, by contrast, plaintiff alleges defendants interfered with her Fourth Amendment right to be free from unreasonable seizures. Am. Comp. ¶¶ 44, 46. Accordingly, the omission of facts stating defendants prevented plaintiff from attending public school does not affect the sufficiency of plaintiff's Bane Act claim.

On reply, VUSD and Shamieh argue plaintiff's Bane Act claim fails because plaintiff has not alleged a violation of "any state constitutional right which is separate and distinct from federal protections," citing *Reynolds v. County of San Diego*, 84 F.3d 1162 (9th Cir. 1996) *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997). VUSD Reply at 7. Defendants misread *Reynolds*. There, the issue was whether the court properly

---

[3] "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment[.]" Cal. Gov't Code § 815.2(a).

11

granted defendant's summary judgment motion as to plaintiff's Bane Act claim based on qualified immunity, which only applies to claims for federal constitutional violations. *Id.* at 1170; *Reynolds v. Cty. of San Diego*, 858 F. Supp. at 1074. Because the Bane Act claim in that case was based only on federal constitutional violations, the court's qualified immunity analysis also applied to the Bane Act claim, which is why the court required a constitutional right separate from federal protections for the claim to survive. *Reynolds* is not applicable here, where defendants have not raised qualified immunity as a defense.

Additionally, on reply, VUSD and Shamieh argue the Bane Act claim requires a showing of "threats, intimidation or coercion separate from the coercion inherent in the search and seizure itself." *Sandoval v. Cty. of Sonoma*, No. 11-CV-05817-TEH, 2016 WL 612905, at *3 (N.D. Cal. Feb. 16, 2016), *aff'd*, 912 F.3d 509 (9th Cir. 2018); VUSD Reply at 7. However, *Sandoval*, and the Ninth Circuit precedent on which *Sandoval* relies, *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015), did not address an excessive force claim. In a footnote, the court in *Sandoval* highlights this distinction saying, "The law is notably different when it comes to excessive force Bane Act claims— '[a] Plaintiff bringing a Bane Act excessive force [claim] need not allege a showing of coercion independent from the coercion inherent in the use of force.'" Sandoval, 2016 WL 612905, at *3 n.2 (quoting *Rodriguez v. City of Modesto*, No. 10-CV-1370, 2013 WL 6415620, at *13 (E.D. Cal. Dec. 9, 2013)).

Furthermore, the Ninth Circuit specifically addressed a Bane Act claim based on excessive force in *Reese v. Cty. of Sacramento*, and again clarified that the Bane Act does not "require[] coercion independent from the constitutional violation." 888 F.3d at 1045. Plaintiff has sufficiently alleged Klopson used "threats, intimidation or coercion" against plaintiff in saying that Klopson used force against her during the incident on the school bus. This challenge to plaintiff's claim is also unsuccessful.

For the foregoing reasons, defendants' motions to dismiss plaintiff's Bane Act claim are DENIED.

////

////

B. <u>Disability Discrimination Claims</u>

Plaintiff brings four disability discrimination claims against VUSD: an ADA Title II claim and a Rehabilitation Act claim (claims 2 and 3); an Unruh Act claim (claim nine); and a California Education Code section 220 claim (claim 11).

1. <u>ADA and Rehabilitation Act Section 504 Claims Against VUSD (claims 2 and 3)</u>

ADA Title II and Rehabilitation Act Section 504 ("§ 504") both prohibit public entities from discriminating against people with disabilities by denying them access to or participation in that entity's benefits, services, and programs. *See* ADA Title II, 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); Rehabilitation Act § 504, 29 U.S.C. § 794 ("[N]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). A discrimination claim under either statute requires plaintiff to show that, although she is otherwise entitled to a specific entity's services or programs or activities, that entity discriminated against her or denied her services based on her qualifying disability. *See Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999); *see also Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) ("[T]here is no significant difference in the analysis of rights and obligations created by the two Acts" (citation omitted)).

a. *Respondeat Superior* Liability

VUSD argues plaintiff cannot state a claim against it, because VUSD cannot be held liable for the actions of its employee, defendant Klopson. The crux of VUSD's argument is that the Ninth Circuit's holding in *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), that *respondeat superior* liability is available under the ADA and § 504, is no longer good law after *Barnes v. Gorman*, 536 U.S. 181 (2002). *Barnes* held the remedies available under the

| | |
|---|---|
| 1 | ADA and § 504 are identical to those available under Title VI.  536 U.S. at 185.  Therefore, |
| 2 | defendants argue, *respondeat superior* liability is not available under the ADA and § 504 because |
| 3 | such liability is not available under Title VI.  VUSD MTD at 12–13 (citing *Oden v. N. Marianas* |
| 4 | *College*, 440 F.3d 1085, 1089 (9th Cir. 2006); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. |
| 5 | 274, 285 (1998) (Title IX); *United States v. County of Maricopa, Arizona*, 889 F.3d 648, 652 (9th |
| 6 | Cir. 2018) (Title VI)).  Furthermore, the Court in *Barnes* explained that contract principles apply |
| 7 | to determine the scope of liability under the ADA and § 504, and therefore a public entity cannot |
| 8 | be held liable "for its failure to comply with vague language describing the objectives of the |
| 9 | statute." *Barnes*, 536 U.S. at 186–87. |

        *Duvall* remains good law in the Ninth Circuit until its holding is overruled by the Supreme Court, or the Ninth Circuit, en banc, overrules it.  *See Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003) ("In the absence of intervening Supreme Court precedent, one panel cannot overturn another panel[.]" (citation omitted)).  *Barnes* only expressly addressed whether punitive damages were available under the ADA and § 504, not *respondeat superior*, so it did not overrule the holding in *Duvall*.  District courts in the Ninth Circuit and other Courts of Appeal continue to follow *Duvall*.  *See, e.g.*, *K.T.*, 219 F. Supp. 3d at 981 ("*Duvall* makes abundantly clear that, when a plaintiff brings a direct suit under the ADA or the Rehabilitation Act, a public entity is liable in *respondeat superior* for the acts of its employees."); *E.H. v. Brentwood Union Sch. Dist.*, No. C13-3243 TEH, 2013 WL 5978008, at *5 (N.D. Cal. Nov. 4, 2013) (same); *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (collecting cases from Fourth, Seventh, Ninth and Eleventh Circuits finding *respondeat superior* liability for ADA and § 504 claims).  This court declines to accept defendants' invitation to speculate regarding what the Ninth Circuit may do in the future; until the Ninth Circuit or the Supreme Court overrules *Duvall*, *respondeat superior* liability remains available for ADA and § 504 cases in this Circuit.  Therefore, if plaintiff adequately pleads an ADA and § 504 claim against Klopson, her claims against VUSD survive.

/////

/////

b. <u>Prima Facie Claims Under ADA & Section 504</u>

The elements of an ADA claim are:

(1) the plaintiff is an individual with a disability;

(2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;

(3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and

(4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citation omitted). Plaintiff has alleged she has autism and was denied the benefits of her public school when Klopson singled plaintiff out for abuse and harassment "because of her disability and in response to behaviors related to her disability." *See* Am. Compl. ¶¶ 65–66, 69. These allegations are sufficient to state ADA and § 504 claims against Klopson, and defendants do not argue otherwise. *See Roe ex rel. Preschooler II v. Nevada*, 332 F. Supp. 2d 1331, 1341 (D. Nev. 2004) (denying motion to dismiss ADA and § 504 claim with similar facts), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Preschooler II*, 479 F.3d 1175.

In order to recover monetary damages under the ADA or § 504, "a plaintiff must prove intentional discrimination on the part of the defendant," which requires a showing of "deliberate indifference." *Duvall*, 260 F.3d at 1138. "Deliberate indifference," in turn, requires (1) "knowledge that a harm to a federally protected right is substantially likely" and (2) "a failure to act upon that likelihood." *Id.* at 1139. Plaintiff alleges Klopson knew plaintiff was disabled and her actions would likely deprive plaintiff of "equal and meaningful access to education and exacerbate behaviors related to her disability." Am. Compl. ¶ 69. This is sufficient to state a claim for monetary damages against Klopson, and Klopson does not argue otherwise.

c. <u>Conclusion</u>

Accordingly, plaintiff has stated a prima facie claim against Klopson for monetary damages under the ADA and § 504, and therefore she has stated a claim against VUSD,

/////

15

Klopson's employer, under the doctrine of *respondeat superior*. *See Duvall v. County of Kitsap*, 260 F.3d at 1138.

### 2. Unruh Act Claim Against VUSD (claim 9)

Plaintiff also brings an Unruh Act claim against VUSD. *See* Cal. Civ. Code § 51(f).[4] Plaintiff's Unruh Act claim is derivative of her ADA disability discrimination claim. *Cohen v. City of Culver City*, 754 F.3d 690, 701 (9th Cir. 2014) ("[A] violation of the ADA constitutes a violation of the Unruh Act." (citation omitted)); *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 670 (2009) (same); *see also* VUSD MTD at 14 (citing *Cohen*, 754 F.3d 690). Accordingly, analysis of the Unruh Act claim mirrors that of the ADA claim, and, for the reasons described above, VUSD's motion to dismiss plaintiff's Unruh Act claim is also DENIED.

### 3. VUSD's Motion for Permission to Petition for Interlocutory Appeal

VUSD moves for permission to petition for interlocutory appeal "should the court rely on *Duvall* with respect to plaintiff's second, third, and ninth claims." VUSD MTD at 16. The resolution of such a request is dictated by 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

*Id.* "Even where all of these elements are met, district courts retain discretion to deny permission for interlocutory appeal." *In re Empire Land, LLC*, No. EDCV 16-00831 DDP, 2017 WL 6453286, at *1 (C.D. Cal. Dec. 15, 2017) (citation omitted). Here, there is not "substantial ground" for difference of opinion, because *Duvall* remains good law in this Circuit as long as it has not been directly overruled, as explained above. Moreover, since the *Barnes* decision in June 2002, several circuits and other district courts within the Ninth Circuit have treated *Duvall* as good law. *See K.T.*, 219 F. Supp. 3d at 981; *E.H.*, 2013 WL 5978008, at *5; *Delano-Pyle*, 302

---

[4] "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(f).

F.3d at 574 (collecting cases). Accordingly, an interlocutory appeal to the Ninth Circuit, based on a speculative hope the Circuit might rule in defendants' favor in the future, is unwarranted here. Defendants' motion in this respect is DENIED.

        4. <u>Claim for Violation of Education Code Section 220 Against VUSD (claim 11)</u>

Section 220 of the California Education Code prohibits discrimination based on protected characteristics, including disability, in any "program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." *See* Cal. Educ. Code § 220. To succeed on a section 220 claim, plaintiff must show she suffered "severe, pervasive and offensive harassment" on the basis of disability, which effectively deprived her of equal access to educational benefits and opportunities. *Smith v. Tobinworld*, No. 16-CV-01676-RS, 2016 WL 3519244, at *8 (N.D. Cal. June 28, 2016); *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008). She must also show VUSD acted with deliberate indifference in the face of "actual knowledge" of such harassment. *Smith*, 2016 WL 3519244, at *8.

In challenging plaintiff's section 220 claim, VUSD again argues that "[n]o facts are pled regarding actual notice or a deliberately indifferent response by VUSD once it learned of the alleged conduct by Klopson." VUSD MTD at 15. As explained above, plaintiff has not pleaded enough facts to create a plausible inference that VUSD had notice of past instances of abuse. *See* Am. Compl. ¶¶ 50, 70. However, plaintiff has represented that she is able to amend the complaint to add such facts. Accordingly, VUSD's motion to dismiss on this basis is GRANTED with leave to amend.

   C. <u>Negligence & Negligent Infliction of Emotional Distress (NIED) Against Defendant Shamieh (claim 13)</u>

In response to defendants' argument that plaintiff's NIED claim is redundant of her negligence claim, VUSD MTD at 15, plaintiff has agreed to "merge" her negligence claim against all defendants with her NIED claim, VUSD Opp'n at 20. At hearing, plaintiff explained

/////

17

she is only proceeding with a claim for negligence. Accordingly, the court analyzes both plaintiff's claims against Shamieh as one claim for negligence.

Shamieh argues she is immune from liability for any state law claims under California Government Code section 820.8, which provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person." *Id.*; VUSD MTD at 8. However, section 820.8 only immunizes Shamieh from a claim based on vicarious liability, it does not "exonerate[] a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission," Cal. Gov't Code § 820.8. *See Turano v. Cty. of Alameda*, No. 17-CV-06953-KAW, 2019 WL 501479, at *4 (N.D. Cal. Feb. 8, 2019); *Baston v. Yett*, No. 116CV01564 LJO EPG, 2017 WL 6016945, at *5 (E.D. Cal. Dec. 5, 2017), *report and recommendation adopted*, 2017 WL 6558164 (E.D. Cal. Dec. 22, 2017). Therefore, if plaintiff properly pleads a negligence claim against Shamieh, section 820.8 does not protect Shamieh from liability. *See Baston*, 2017 WL 6016945, at *5.

"In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citation omitted). Defendants do not challenge plaintiff's pleading of any of these elements in their motions to dismiss, but simply argue plaintiff "has not pled any facts that Superintendent Shamieh had any involvement with anything alleged in this case." VUSD MTD at 7. Plaintiff alleges Shamieh had a duty to plaintiff based on her role as supervisor of VUSD staff, and she was negligent by failing to take action to prevent Klopson from abusing plaintiff after Shamieh became aware Klopson had abused other students in the past, thereby causing plaintiff's injuries here. *See* Am. Compl. ¶¶ 6, 50–51, 86, 89, 91–92. As explained above, plaintiff's allegations against Shamieh are scant, and rely primarily on plaintiff's "information and belief." *See id.* ¶ 50. But again, at hearing, plaintiff represented she can add facts to bolster these claims if given leave to amend.

Accordingly, Shamieh's motion to dismiss plaintiff's negligence claim is GRANTED with leave to amend.

/////

D. <u>Punitive Damages against Shamieh</u>

Plaintiff has requested punitive damages against Shamieh based on her § 1983 claim and her negligence claim. *See id*. ¶¶ 59, 183. In her opposition to VUSD's motion to dismiss, plaintiff has stipulated to the dismissal of her punitive damages claim against Shamieh. VUSD Opp'n at 20. Therefore, all plaintiff's punitive damages claims against Shamieh are DIMISSED.

IV. <u>CONCLUSION</u>

For the foregoing reasons, it is hereby ORDERED:

1. VUSD and Shamieh's motion to dismiss is GRANTED with respect to plaintiff's: § 1983 claim against VUSD and Shamieh; negligence claim against Shamieh; section 200 claim against VUSD; and punitive damages claim against Shamieh. Those claims are hereby DISMISSED. The motion is otherwise DENIED.

2. The court GRANTS plaintiff leave to amend, subject to Federal Rule of Civil Procedure 11, her § 1983 claim under the Fourth Amendment against Shamieh; negligence claim against Shamieh; and section 200 claim against VUSD. Plaintiff's § 1983 claim against VUSD and punitive damages claim against Shamieh are dismissed without leave to amend.

3. VUSD and Shamieh's request for permission to petition for interlocutory appeal is DENIED.

4. Klopson's motion to dismiss is DENIED.

This resolves ECF Nos. 17 and 19.

IT IS SO ORDERED.

DATED: February 19, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE